GOW v. WARD.

(Supreme Court, Appellate Division, First Department. May 12, 1911.)

DISCOVERY (§ 84*)—EXAMINATION OF BOOKS AND PAPERS—RELIEF.

Plaintiff and defendant having been formerly partners, plaintiff conveyed his interest in the firm to defendant, and several years thereafter sued to set such conveyances aside, alleging that they were made without consideration during a financial panic to save both plaintiff and the firm from bankruptcy on defendant's agreement that plaintiff should retain his half interest in the firm, its earnings, contracts, and assets, subject to the payment of all the obligations from profits of the business, and that defendant would conduct the business for the joint benefit of plaintiff and defendant; that defendant refused later to recognize plaintiff's interest in the firm. There was no claim of inadequacy of consideration or of any misrepresentation or concealment by defendant. *Held* that, prior to the determination of plaintiff's right to set aside the conveyances of his interest, he was not entitled to an order for the examination of the accounts, books, and papers of the firm before trial.

[Ed. Note.—For other cases, see Discovery, Dec. Dig. § 84.*]

McLaughlin, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by William Gow against Artemas Ward. From an order denying plaintiff's motion for discovery and inspection of books, papers, etc., he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Anson Beard, for appellant.

Charles E. Rushmore, for respondent.

DOWLING, J. This appeal is from an order denying an application for a discovery and inspection of certain books, papers, and documents relating to the business of the former firm of Ward & Gow, whereof plaintiff and defendant for some 16 years prior to October 24, 1907, had been members. On that date, as set forth in the complaint, the firm which had conducted a large and successful advertising business, and was the owner of valuable privileges and contracts extending over a long term of years, had assets of at least $2,500,-000 which would have suffered a large depreciation in case of a forced sale thereof. Plaintiff at that time was individually the owner of a large number of shares in the Borough Bank of Brooklyn and in the International Trust Company of New York. Both plaintiff and the firm were largely indebted to various persons. In the financial panic which was then existent, plaintiff was in serious financial straits, and was being so pressed for payment of his indebtedness that bankruptcy or insolvency was imminent, both to plaintiff and to the firm. Defendant, having been called upon to assist both plaintiff individually and the firm in avoiding the impending insolvency, is charged to have stated to plaintiff that some action should be taken to temporarily protect the firm from becoming involved in the personal obligations of plaintiff as a receivership of the firm, or the forced sale of its assets would be ruinous both to plaintiff and to it, and defendant suggested that legal advice be sought to ascertain what action could be properly taken to protect both plaintiff and the firm. Plaintiff alleges as a fact that, if the firm assets had then been sold, they would not have realized enough to pay either his or the firm's debts, and that only by continuing business could they be paid. Acting upon the advice of counsel, and upon the representation of defendant that the arrangement would be a temporary one only, plaintiff signed two papers, one of which was a consent to a dissolution of the firm and the other an assignment of all his interest therein to defendant. These he claims to have signed upon defendant's representation that the purpose of their execution was to protect the business and contracts of the firm from a receivership and to prevent the sacrifice of its assets at forced sale, to enable the business of the firm to continue that the obligations of plaintiff and the firm might be paid, and that plaintiff would retain his one-half interest in the firm, its earnings, contracts, and assets, subject to the payment of all obligations, firm and personal, from the profits of the business. Defendant is also charged to have represented that such papers, when signed, would not divest plaintiff of his interest in the firm, but that defendant would conduct its affairs for the joint benefit

of plaintiff and himself, that the former's share of the profits would be used to pay his personal debts, and that he could trust defendant to carry out the agreement on account of their long business and social relations. Plaintiff further claims that he was laboring under great mental strain, and thus was the more easily induced to believe defendant's representations and follow his advice and that of counsel. He charges that he relied upon these representations and statements, believing them to be true, and that by his actions both his obligations and those of the firm would be met, that he relied on the defendant's promise to conduct the business for their joint benefit, and that he would not have signed the papers unless he had been informed by defendant that such act was for the best interests of his creditors and those of the firm. He claims not to know the consideration named in the papers signed by him, but he denies receiving any consideration whatever for the execution thereof. He does set forth, however, that defendant assigned certain stock of the Hollis Park Company and the Westfield Real Estate Company, of which they were joint owners, to him to be used in helping to defray plaintiff's personal obligations under the agreement, and this stock he turned over to the Borough Bank with the other property owned by him. The half interest in said stock thus transferred originally cost $115,000, but at the time in question it is alleged to have had no market value. Thereafter, on November 8, 1907, defendant induced plaintiff to sign a further instrument assigning his interest in the firm by the representation that it was necessary to assist in carrying out the original agreement, and that it had no effect different from the papers theretofore signed; plaintiff claiming that all these representations were made by defendant in order that he might thereafter claim that he was the sole owner of the firm's assets, business, contracts, and profits, to the exclusion of plaintiff and his creditors. A demand for a share of the profits and for accounting has been refused by defendant. The relief prayed for in brief is that the papers signed on October 24th and November 8th be adjudged null, void, of no force and effect, and be surrendered for cancellation; that it be determined that plaintiff is the half owner of all the property of the firm, and that defendant received the same for the equal benefit of plaintiff and himself; and that defendant account to plaintiff for his management of the business. Thus far the complaint. It will be seen that it does not proceed upon any theory of inadequacy of consideration. It denies the receipt of any consideration whatever. It asserts the existence of an agreement by which defendant was ostensibly to take over all plaintiff's interest in the firm, but in reality was only to hold that interest for plaintiff's benefit until the financial stress was over and until out of the earnings of the firm its debts and those remaining due by plaintiff individually had been discharged. It contains no allegation whatever of any misrepresentation or concealment by defendant of the firm's assets or liabilities, or as to the condition of plaintiff's or defendant's personal accounts with the firm. It charges the making of a representation as to the effect of plaintiff's signing certain papers and a promise by defendant of what he would do with the interest thus nominally conveyed.

From his petition for the order in question, however, it appears that, an order for the examination of defendant before trial having been made, it was thereafter modified by limiting its scope to the circumstances surrounding the making of the papers in question, the purpose of the modification being to permit an examination of defendant as to the matters which may tend to show that plaintiff has a right to an accounting from defendant, and to preclude him from going into an accounting upon said examination. It then appeared that further papers were signed by defendant on November 10, and 26 and 27, 1907, but the materiality of these to the present issue does not sufficiently appear. Plaintiff now claims that because certain of the papers executed by him recited a consideration, among others, of $150,000 overdrafts by plaintiff, and because as defendant has testified that he had only drawn $15,000 from the firm profits, plaintiff's drafts therefor could not have exceeded $165,000, which he avers was at least $500,-000 less than he was entitled to draw. He further claims that he does not know the contents of the book accounts, ledgers, journals, and other records of the firm, and that he desires to examine them to prove how much he was entitled to draw as profits from 1891 to 1907, and that such sum was far in excess of the amount named as the consideration for the assignment, and that there was no consideration therefor. But the petition does not change the cause of action alleged in the complaint, which does not seek relief by reason of any inadequacy of consideration for the transfer, but because of the absence of any consideration whatever, and predicates the right to recover upon an express agreement that the transfer of plaintiff's interest in the firm was but a temporary expedient, defendant to use it only as a means of protecting plaintiff, the firm, and the creditors of both from unnecessary loss and perhaps financial ruin, and agreeing that plaintiff was still his equal partner in all respects. Upon that issue the examination of the firm's books is not material in any way. There is no claim that defendant ever misrepresented to plaintiff the facts shown by the books or referred to them in any way. Plaintiff upon the record has parted with all interest in the firm, and cannot be reinstated therein until his cause of action has been judicially declared to be well founded.

When that time arrives, he will be entitled to an accounting. Until then he has no right thereto, nor can this be granted him indirectly by such an inspection and discovery as is now proposed. Moore v. Reinhardt, 132 App. Div. 707, 117 N. Y. Supp. 534; Fogarty v. Fogarty, 128 App. Div. 272, 112 N. Y. Supp. 742.

The order appealed from should be affirmed, with $10 costs and disbursements.

INGRAHAM, P. J., and SCOTT and MILLER, JJ., concur.

McLAUGHLIN, J. (dissenting). Plaintiff appeals from an order denying a motion for a discovery and inspection of certain books of account and documents in the possession of the defendant. The parties were formerly partners doing business under the name of Ward & Gow, and the action is brought to set aside and cancel certain instruments purporting to dissolve the firm and transferring its property to

the defendant, Ward. The complaint also asks for an accounting of the partnership assets and a judgment against the defendant for an amount found due to the plaintiff.

The record shows that the firm of Ward & Gow carried on a large and profitable advertising business from some time in 1892 to October 24, 1907, at which date the plaintiff executed and delivered to the defendant what was in form an assignment of all his interest in the firm's property, a consent that the defendant continue the business under the firm name, and a declaration that the firm was, on that day, dissolved. A few days later he executed more formal documents to the same effect, viz., a general release on October 29th, an agreement "of further assurance" on November 8th, and other confirmatory papers on November 10th, 26th, and 27th.

The right to maintain the action is based upon allegations of fact to the effect that the transaction was not intended to be an assignment of plaintiff's interest in the assets, or to work a dissolution of the firm; all that was sought to be accomplished was to prevent, at the instance of plaintiff's creditors, a receiver being appointed; the plaintiff's claim being that the defendant promised to continue the business for the benefit of both partners, and to use the plaintiff's share of the profits of the business in paying his individual debts. The defendant, on the other hand, claims that the firm was actually dissolved, the assignment of the plaintiff's interest in the assets was absolute, and was for a valuable consideration. It will be observed, however, that he does not indicate, otherwise than by a statement of counsel in his brief, what the consideration was. The assignment dated October 24, 1907, states that the consideration was "the sum of $150,000 more or less consisting of my [the plaintiff's] overdrafts on the firm of Ward & Gow"; that what was meant by "overdrafts" was the amount drawn by the plaintiff out of the profits of the business in excess of what the defendant drew. In another instrument signed on October 24, 1907, being a consent that the defendant continue the business in the firm name, the consideration for the assignment is given as the plaintiff's indebtedness to the firm "in the sum of $250,000, and upwards for overdrafts and otherwise." These are the only places in the record where any consideration is specified, and the plaintiff seeks an examination of the firm's books kept prior to October 24, 1907, to prove that, in fact, there was no consideration, inasmuch as the plaintiff's share of the profits exceeded by a large amount what he drew out, and that he was not at that time indebted to the firm in any sum whatever. He desires to show this fact, not as a ground for rescinding or setting aside the assignment, but as a fact tending to show that the parties did not intend the transaction to be an assignment.

I do not see how it can be seriously denied, if the property assigned had the large value claimed for it by the plaintiff, and if there were, in fact, no consideration for the assignment itself, that these facts would be material as bearing upon the plaintiff's claim; that is, that an absolute assignment was not intended. The record shows enough at least to indicate the plaintiff's good faith in seeking the evidence which he does. He alleges that the net profits of the firm for the

period from January 1, 1903, to January 1, 1907, were $736,000 in the advertising branch of the business alone, and that all he drew out from the time the firm was organized until the assignment was made was $165,000. It is true the defendant alleges that the profits in the main branch of the business were to some extent counterbalanced by losses in other branches, and attention is called to an instance in which there was a loss of $360,000, and he also alleges that the plaintiff drew out $315,000 from his share of the profits, instead of $165,000, as set forth by him. But only two months before the alleged assignment the parties entered into an agreement which recited the value of the plaintiff's interest in the partnership assets at $1,000,000. The books which the plaintiff seeks to inspect relate entirely to the business which the firm transacted while he was a member of it. As a general proposition, a member of a firm, even though dissolution has taken place, should be permitted to inspect, at all reasonable times, the books of the firm while he was such member. A liberal rule under such circumstances, as pointed out in Howlett v. Hall, 55 App. Div. 614, 67 N. Y. Supp. 267, should be applied. In that case this court said:

"The right of a partner to a disclosure of partnership books rests upon entirely different principles from the rights of third persons to have a disclosure, it being usual almost as a matter of course to grant such examination and inspection to a partner. * * * And it is only where it can be seen that the application is made in bad faith that he will be refused the privilege. The fact that the partnership is dissolved does not change the rule, the courts recognizing the right of a former partner to have access to the books at all reasonable times." Kelly v. Eckford, 5 Paige, 548; Stebbins v. Harmon, 17 Hun, 445; Bearns v. Burras, 86 Hun, 258, 33 N. Y. Supp. 262.

It sufficiently appears that this application is made in good faith, and, if granted, cannot possibly injure the defendant. All of the authorities which hold that in an action for an accounting the plaintiff will not until after an accounting is decreed be granted an inspection of books containing a record of the transaction to be accounted for have no application. The plaintiff here is seeking to show his right to an accounting, which obviously must be established before an accounting can be decreed. That there was, in fact, no consideration for the assignment, if it be a fact, must be largely ascertained by an inspection of the books.

I think the order appealed from should be reversed, with $10 costs and disbursements and the motion granted with $10 costs.